# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ROQUE DE LA FUENTE GUERRA,

    Plaintiff,

    v.                                                                                            1:16-cv-0393-RB-LF

MAGGIE TOULOUSE OLIVER,
*New Mexico Secretary of State*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Maggie Toulouse Oliver's Motion to Dismiss (Doc. 33). Having reviewed the accompanying briefing and being otherwise fully advised, the Court will grant the Motion.

### I.   PROCEDURAL POSTURE

On May 6, 2016, Plaintiff Roque De La Fuente Guerra filed a Complaint against the New Mexico Secretary of State[1], alleging violations of his constitutional rights stemming from his exclusion from the state's Democratic primary ballot. Doc. 1. Specifically, Plaintiff alleges that he was denied, without due process, access to the New Mexico Democratic primary ballot despite having collected the requisite number of signatures for inclusion, in violation of the First and Fourteenth Amendments and the "Elections Clause," Article I, Section 4. *Id*.

Following this Court's denial of Plaintiff's request for a Temporary Restraining Order and Preliminary Injunction (Doc. 7), Defendant Winter filed his answer to the Complaint on June 7, 2016. Doc. 9. Following the substitution of the current Secretary of State, Defendant Oliver

---

[1] Plaintiff initially brought suit against former New Mexico Secretary of State Brad Winter. *See* Doc. 1. However, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, current Secretary of State Maggie Toulouse Oliver was added in substitution of Defendant Brad Winter on January 30, 2017.

filed a Motion to Dismiss on February 14, 2017, asserting lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Doc. 33. Plaintiff filed his response opposing the motion on February 28, 2017 and Defendant replied on March 14, 2017. *See* Docs. 34, 37.

## II.  FACTUAL ALLEGATIONS

Plaintiff "Rocky" Roque De La Fuente Guerra is a California resident domiciled in San Diego. Doc. 1 at 2. He is a registered Democratic voter and was registered with the Federal Election Commission (FEC) as a presidential candidate of the Democratic Party as of October 1, 2015. *Id*. Plaintiff meets the qualifications prescribed in Article 2, Section 1 of the United States Constitution for election to the office he seeks in that he is a natural-born citizen of the United States, is over the age of 35, and has been a resident within the United States for 40 years. *Id.*

In the months following his registration with the FEC, Plaintiff organized a nationwide campaign, attaining qualification to appear on the Democratic Party Presidential Preference Primary Ballots of Alabama, Arkansas, and New Hampshire. Doc. 1 at 3. As part of this campaign, Plaintiff sought access to the Democratic Presidential Primary ballot in New Mexico via a petition containing over 32,000 signatures in order to comply with the requirements of Section 1-15A-6 of the New Mexico Election Code. *Id*. at 3–4. To gather these signatures, Plaintiff hired a reputable signature gathering company and expended over $350,000. *Id*. at 4.

On or about March 28, 2016, a representative of the state elections division provided Plaintiff's campaign with an electronic copy of a letter informing Plaintiff that his petitions had been rejected. Doc. 1 at 5; Doc. 37, Ex. 1. This letter states that Plaintiff's petitions did not meet the minimum number of signatures as required by the Presidential Primary Act, and that Plaintiff's name would not be placed on the 2016 primary election ballot. *Id*. Following this

2

rejection, Plaintiff's campaign staff made several inquiries for additional information regarding the petition denial, and Defendant provided an explanatory letter on April 13, 2016. Doc. 1 at 5–6; Doc. 37, Ex. 2. This letter stated that Plaintiff had failed to secure the necessary signatures in Congressional District One, explaining that the state had processed 10,760 of his 12,940 submitted signatures and determined that only 2,901 were validly verified. *Id*. This determination meant that it was impossible for Plaintiff to have provided the 5,644 valid signatures necessary to reach the two percent threshold in District One even if one hundred percent of the unprocessed signatures were valid. *Id*.

The New Mexico Democratic Presidential Primary took place on June 7, 2016.

### III.    LEGAL STANDARDS

#### A. Motions to Dismiss under Rule 12(b)(1)

"A 12(b)(1) motion is the proper avenue to challenge the court's subject matter jurisdiction, and Rule 12(h)(3) requires that '(w)henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" *Barnson v. United States*, 531 F. Supp. 614, 617 (D. Utah 1982). Such motions may take one of two forms. First, "a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing motions of this type, "a district court must accept the allegations in the complaint as true." *Id*. Second, "a party may go beyond allegations contained in the complaint and challenge facts upon which subject matter jurisdiction depends. *Id.* In evaluating motions brought under the second form, the Tenth Circuit explained:

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

3

*Id.* (internal citations omitted). Accordingly, this Court reviews the face of the complaint and any relevant external materials to determine whether Plaintiff has presented claims within the Court's jurisdiction, a necessary prerequisite for adjudication on the merits. Fed. R. Civ. P. 12(b)(1); *see also Fleming v. Gutierrez*, 785 F.3d 442, 444 (10th Cir. 2015) (holding that lack of subject matter jurisdiction precludes reaching the merits of a dispute).

### B. Motions to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and must view them in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id*.

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The court need only evaluate allegations "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, the court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Following these principles, the Court considers whether the facts "plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677–78).

### IV. DEFENDANT'S 12(B)(1) MOTION TO DISMISS

In seeking dismissal, Defendant argues that this Court's exercise of jurisdiction is precluded by state sovereign immunity. Doc. 33 at 5–8. "[F]ederal courts are courts of limited jurisdiction [and] the party invoking federal jurisdiction bears the burden of proof." *Penteco Corp. P'ship--1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). The Eleventh Amendment states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This provision creates an immunity which "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," regardless of the relief sought. *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). "T]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (internal quotation marks omitted).

The Court notes, as an initial matter, some confusion as to which defendants remain in this case. As indicated above, the present Complaint was initially brought against former New

5

Mexico Secretary of State Brad Winter but pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, current Secretary of State Maggie Toulouse Oliver was substituted and Defendant Winter was terminated from the case caption on January 30, 2017. However, in his response opposing dismissal, Plaintiff indicates his understanding that Defendant Winter remains a defendant in his individual capacity, while Defendant Oliver is being sued only in her official capacity as Secretary of State. *See* Doc. 34. Accordingly, the Court examines the applicability of Eleventh Amendment immunity to suits against public officials in their official and individual capacities.

Federal suits against state officials in their official capacity are considered suits against the state and are thus subject to Eleventh Amendment immunity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). However, the Supreme Court has articulated a narrow exception to the general grant of constitutional immunity, allowing suits against state officials seeking to enjoin alleged ongoing violations of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). In other words, an action against a state employee seeking only injunctive relief is not considered an action against the state and, consequently, is not subject to sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984). Conversely, to the extent that Plaintiff's claims seek monetary damages against state employees in their official capacity, they are barred by sovereign immunity.

In his Complaint, Plaintiff seeks the following relief: compensatory damages against Defendants in an amount reasonable and commensurate with the losses imposed upon him by Defendants' unlawful acts; either a delay of the Democratic Presidential Primary or the addition of his name to the primary ballot; a final order declaring that Plaintiff is qualified for and legally entitled to be included on the Presidential Primary ballot; and an order for Defendants to submit

evidence of the "invalid signatures" from all of the Congressional Districts, and an explanation of how they determined which signatures were from Congressional District One. *See* Doc. 1 at 10–13. With regard to compensatory damages, Defendant Oliver is clearly immune from suit in her official capacity. *See Pennhurst*, 465 U.S. at 105. With regard to the non-monetary relief sought, Plaintiff's request for delay of the primary or inclusion on the ballot is moot, as the 2016 primary has already occurred. *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (a claim is "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"). In addition, Plaintiff's request that this Court declare that he is qualified and entitled to appear on the New Mexico Democratic Primary ballot requires a determination of state election law, which falls outside this Court's jurisdiction. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1155 10th Cir. 2011) (holding that the *Young* exception only applies to allegations of ongoing violation[s] of federal law); *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir. 1998) ("federal courts have no jurisdiction to entertain a suit that seeks to require [a] state official to comply with state law").

Plaintiff's last remaining request for relief seeks an order for Defendants to submit evidence of the "invalid signatures" from all of the Congressional Districts, and an explanation of how they determined which signatures were from Congressional District One. Doc. 1 at 12. At first glance, this request also appears to be mooted by the fact that Plaintiff's exclusion from the state primary ballot is now a *fait accompli*. However, Plaintiff has explained in his briefing that he intends to seek the Democratic nomination for president during the 2020 election cycle and stresses that the state's explanation of how the invalidated signatures were deficient is vital to timely state court review and ensuring his inclusion on future state primary ballots. *See* Doc. 34 at 4. As such, Plaintiff maintains a cognizable interest in the relief sought if he is legally entitled

to it. Accordingly, Plaintiff retains at least one live claim for injunctive relief against Defendant Oliver in her official capacity which is not barred from jurisdiction by Eleventh Amendment immunity.

With regard to Plaintiff's suit against a public official, be it Defendant Winter or Defendant Oliver, in their individual capacity, both the Supreme Court and the Tenth Circuit have held that suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 277 n. 11 (1986); *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132–33 (10th Cir. 2001). "[A] suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally." *Alden v. Maine*, 527 U.S. 706, 757 (1999). The Eleventh Amendment is not implicated in such suits because any award of damages will be satisfied from the individual's personal assets and will not be paid from the state treasury. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Accordingly, Plaintiff retains justiciable claims notwithstanding Defendant's claimed immunities. This Court will therefore turn to the merits of Plaintiff's Complaint to determine if his factual allegations sufficiently state a claim for relief.

**V.    DEFENDANT'S 12(B)(6) MOTION TO DISMISS**

Defendant argues that, regardless of jurisdiction, dismissal is proper on the basis that Plaintiff has failed to allege enough facts to state a claim that is plausible on its face. Doc. 33 at 3–5. Specifically, Defendant states that Plaintiff has not demonstrated how an alleged failure by the New Mexico Secretary of State to provide a breakdown or reasons why they rejected many of Plaintiff's submitted signatures constitutes a violation of his due process or equal protection

rights. *Id*. at 4. Defendant further alleges Plaintiff's failure to assert the basis for how his First or Fourteenth Amendment rights were violated by the state's purported misprocessing or miscounting of his petition signatures. *Id*. Accordingly, Defendant argues that Plaintiff's allegations are conclusory in nature and fall short of the pleading standard required for a proper Complaint, entitling Defendant to dismissal. *Id*. at 5.

### A. Timeliness

Plaintiff argues as a preliminary matter that Defendant Oliver's motion to dismiss is untimely. Doc. 34 at 3–4. Rule 12 of the Federal Rules of Civil Procedure states, in relevant part:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . (6) failure to state a claim upon which relief can be granted . . . A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

Fed. R. Civ. P. 12 (b). Plaintiff claims that the motion to dismiss is foreclosed by the fact that "Defendants filed a responsive pleading in the form of an answer" on June 7, 2016, more than eight months before the present motion. *See* Doc. 34 at 3–4. First, the Court notes that the Answer in question was filed by Defendant Winter while the present motion to dismiss was filed by Defendant Oliver, who did not file a responsive pleading before this motion and was not even added to the case until January 30, 2017. *See* Doc. 9; Doc. 33. Further, even presuming that the substitution of Defendant Oliver under FRCP Rule 25(d) bound her to Defendant Winter's responsive pleading, that pleading reserved the right to the present motion by asserting failure to state a claim as its second affirmative defense. Doc. 9 at 7; *see also Rodgers v. D.F. Freeman Contractors, Inc.*, 1989 WL 134280, at *1 (D. Kan. Oct. 31, 1989) (citing 5B Wright & Miller Federal Practice and Procedure: Civil 3d § 1357) (holding that Rule 12(b) motions are allowed even after responsive pleadings if the defense has been previously included in the Answer);

*United States v. Ledford*, No. CIV.A. 07-CV-01568-W, 2009 WL 724061, at *7 (D. Colo. Feb. 9, 2009) (same). Finally, even if Defendant Oliver's motion was found to be untimely, the appropriate remedy would simply be for this Court to convert the motion to a Rule 12(c) motion for judgment on the pleadings, which is evaluated under exactly the same standard as a Rule 12(b)(1) motion to dismiss. *See Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005); *Crawford v. Plumm*, 2003 WL 22849183, at* 1 (D. Kan. Nov. 24, 2003).

Accordingly, the Court finds Defendant Oliver's Motion to Dismiss (Doc. 33) to be timely asserted and proceeds to address whether Plaintiff has stated a claim for relief.

### B. Due Process Standard for Ballot Inclusion

In detailing the standard for evaluating First and Fourteenth Amendment claims regarding ballot access and voting rights, the Supreme Court has explained:

> It is beyond cavil that "voting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986). The Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections. *Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986). Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).

*Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Accordingly, the Supreme Court has instructed that a district court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as

justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213-14 (1986).

In exercising its role in structuring federal elections within its borders, the State of New Mexico has promulgated procedures for accessing the primary ballots of national political parties. Specifically, candidates wishing to be nominated for the endorsement of a national political party may submit to the New Mexico Office of the Secretary of State ("SOS") a petition to have the candidate's name printed on the presidential primary ballot. N.M. Stat. Ann. § 1-15A-6 (2011). Such petitions must "be signed by a number of registered voters in each of the congressional districts equal to but not less than two percent of the total number of votes for president cast in each district at the last preceding presidential election. . . .  In verifying the petition, the secretary of state shall count each signature unless it is determined that the person signing is not a registered voter of [the] state, has signed more than one petition or is not the person whose name appears on the nominating petition." *Id*.

These types of laws have been routinely upheld as minimally burdensome and legitimate in furtherance of a state's interest in bringing order to its democratic processes. *See, e.g., Am. Party of Tex. v. White*, 415 U.S. 767, 788–89 (1974) (upholding Texas's signature thresholds of three and five percent for local independent candidates); *Storer v. Brown*, 415 U.S. 724, 740 (1974) (concluding that California's five-percent signature requirement was not per se unconstitutional); *Swanson v. Worley*, 490 F.3d 894, 904 (11th Cir. 2007) (upholding Alabama's three percent signature requirement). Indeed, Plaintiff's Complaint does not seem to take issue with the legitimacy of state voting rules themselves, but rather with their application to his case. *See*

*generally* Doc. 1. Accordingly, the Court turns to the specific factual allegations regarding the Denial of Plaintiff's petition.

It is undisputed that on or about March 4, 2016, the SOS received a petition to have Plaintiff's name printed on the presidential primary ballot and on March 28, 2016, the SOS notified Plaintiff that he failed to meet the required threshold for inclusion on the New Mexico 2016 Primary Election Ballot. Doc. 1 at 4–5. New Mexico is composed of three Districts. *Id*. In order to satisfy the two percent threshold required by the New Mexico Election Code for the 2016 presidential primary, a candidate needed to collect 5,644 valid signatures in District One, 4,605 valid signatures in District Two, and 5,425 valid signatures in District Three. Doc. 1 at 5–6; Doc. 37, Ex. 1. In total, the number of required signatures was 15,674. *Id*. Plaintiff's Complaint alleges that he was not given a breakdown as to the basis for the high rate of rejection of his collected signatures. Doc. 1 at 10. It is true that the state election division's March 28, 2016 letter stated only that Plaintiff's petition did not meet the minimum number of signatures and that Plaintiff's name would not appear on the Democratic primary ballot. *See* Doc. 37, Ex. 1. However, Plaintiff has explicitly acknowledged that, following inquires by his campaign staff, Plaintiff was provided an explanatory letter on April 13, 2016. Doc. 1 at 5–6; Doc. 37, Ex. 2. This letter provided specific details explaining that, for Congressional District One, the state determined that only 2,901 of the 10,760 signatures reviewed were valid, meaning that it was impossible for Plaintiff to have provided the 5,644 valid signatures necessary to reach the two percent threshold for ballot inclusion. *Id*. The letter further explained that the reason the rejected signatures were invalidated was that each "contained at least one factor which made it impossible to identify the individual as a registered voter in New Mexico." Doc. 37, Ex. 2. The letter then listed the factors which invalidated Plaintiff's submitted signatures, including "individuals not

appearing in the voter registration database based upon the information provided, addresses not matching the registration record, illegible information on the petitions, and names not appearing as registered." *Id*.

As to this claim, Plaintiff's response explains that he seeks to prohibit Defendant from rejecting petitions in the future without providing timely notice as to the alleged invalidity of each signature provided so as to permit Plaintiff to challenge the State's determination. However, Plaintiff has provided no authority, nor is this Court aware of any, which states that due process requires an individualized breakdown of the specific reason each of thousands of signatures was rejected as invalid. *See generally* Doc. 1; Doc. 34. Here, the state has already provided: a specific reason for his exclusion from the ballot (a deficient number of valid signatures in Congressional District One); the precise number of signatures processed and invalidated (10,760 and 7,810, respectively); and the criteria used to invalidate the signatures provided ("individuals not appearing in the voter registration database based upon the information provided, addresses not matching the registration record, illegible information on the petitions, and names not appearing as registered."). *see* Doc. 1 at 5–6; Doc. 37, Ex. 2.The Court is thus convinced that the explanation provided is sufficiently specific to satisfy the minimum constitutional standards of notice and due process.

Plaintiff's final allegation in his Due Process claim states that "Defendants lost, destroyed, excluded, miscounted, miscategorized or otherwise excluded the signatures submitted by the Plaintiff." Doc. 1 at 10. This assertion is supported by the factual allegation that the verification rate of his submitted signatures for District One (28%) fell below the typical verification rate of his signature gathering company (60%). *See* Doc. 1 at 5–6. However, a low verification rate for submitted signatures is not itself probative of a due process violation and

Plaintiff concedes that "signatures are consistently invalidated for various reasons including that people are not registered for the correct political party or they are registered elsewhere." Doc. 1 at 4, *see also, e.g*, *Hess v. Hechler*, 925 F. Supp. 1140, 1143 (S.D.W. Va. 1995), *aff'd sub nom. Fishbeck v. Hechler*, 85 F.3d 162 (4th Cir. 1996) (upholding ballot access restrictions which excluded candidate where the Secretary of State found only 39.92% of signatures submitted by the libertarian party to be valid). More importantly, as discussed above, determination of whether or not the Secretary of State properly concluded that Plaintiff did not provide a sufficient number of valid signatures for inclusion of the primary ballot necessarily turns on an interpretation of the state's election code, which falls outside the jurisdiction of this Court. *See* N.M. Stat. Ann. § 1-15A-6 (2011); *ANR Pipeline*, 150 F.3d at 1188 ("federal courts have no jurisdiction to entertain a suit that seeks to require [a] state official to comply with state law").

As the underlying signature requirement for ballot access is constitutionally permissible and Plaintiff's Complaint has failed to provide sufficient factual allegations to state a due process claim on which relief can be granted, dismissal is appropriate.

V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss for failure to state a claim on which relief can be granted.

**THEREFORE**

**IT IS ORDERED** that on Defendant Oliver's Motion to Dismiss (Doc. 33) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**