# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ROQUE DE LA FUENTE GUERRA,

   Plaintiff,

v.                                                                           1:16-cv-0393-RB-LF

MAGGIE TOULOUSE OLIVER,
*New Mexico Secretary of State*,

   Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion to Amend this Court's May 19, 2017 Judgment. (Doc. 55). Having reviewed the accompanying briefing and being otherwise fully advised, the Court will deny the Motion.

### I. PROCEDURAL POSTURE

On May 6, 2016, Plaintiff Roque De La Fuente Guerra filed a Complaint against the New Mexico Secretary of State[1], alleging violations of his constitutional rights stemming from his exclusion from the state's Democratic primary ballot. (Doc. 1.) Specifically, Plaintiff alleges that he was denied, without due process, access to the New Mexico Democratic primary ballot despite having collected the requisite number of signatures for inclusion, in violation of the First and Fourteenth Amendments and the "Elections Clause," Article I, Section 4. (*Id*.)

Following this Court's denial of Plaintiff's request for a Temporary Restraining Order and Preliminary Injunction (Doc. 7), Defendant Winter filed his answer to the Complaint on June 7, 2016. (Doc. 9.) Following the substitution of the current Secretary of State, Defendant Oliver

---

[1] Plaintiff initially brought suit against former New Mexico Secretary of State Brad Winter. (*See* Doc. 1.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, however, current Secretary of State Maggie Toulouse Oliver was added in substitution of Defendant Brad Winter on January 30, 2017.

filed a Motion to Dismiss[2] on February 14, 2017, asserting lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. (Doc. 33.) This Court granted Defendant's motion and dismissed the case on May 19, 2017. (*See* Docs. 53, 54.)

On June 16, 2017, Plaintiff filed a motion seeking to amend this Court's judgment pursuant to Federal Rule of Civil Procedure 59(e). (Doc. 55.) On June 30, 2017, Defendant Oliver filed a response opposing amendment and Plaintiff replied on July 14, 2017. (*See* Docs. 56, 57.)

## II. FACTUAL ALLEGATIONS

Plaintiff "Rocky" Roque De La Fuente Guerra is a California resident domiciled in San Diego. (Doc. 1 at 2.) He is a registered Democratic voter and was registered with the Federal Election Commission (FEC) as a presidential candidate of the Democratic Party as of October 1, 2015. (*Id*.) Plaintiff meets the qualifications prescribed in Article 2, Section 1 of the United States Constitution for election to the office he seeks in that he is a natural-born citizen of the United States, is over the age of 35, and has been a resident within the United States for 40 years. (*Id.*)

In the months following his registration with the FEC, Plaintiff organized a nationwide campaign, attaining qualification to appear on the Democratic Party Presidential Preference Primary Ballots of Alabama, Arkansas, and New Hampshire. (Doc. 1 at 3.) As part of this campaign, Plaintiff sought access to the Democratic Presidential Primary ballot in New Mexico via a petition containing over 32,000 signatures in order to comply with the requirements of Section 1-15A-6 of the New Mexico Election Code. (*Id*. at 3–4.) To gather these signatures, Plaintiff hired a reputable signature gathering company and expended over $350,000. (*Id*. at 4.)

---

[2] Plaintiff continues to refer to this pleading as Defendants' "untimely motion." (Doc. 55 at 5). However, the Court's MOO clearly explained the basis for concluding that Defendants' motion was timely filed. (*See* Doc. 53 at 9–10).

On or about March 28, 2016, a representative of the state elections division provided Plaintiff's campaign with an electronic copy of a letter informing Plaintiff that his petitions had been rejected. (Doc. 1 at 5; Doc. 37, Ex. 1.) This letter states that Plaintiff's petitions did not meet the minimum number of signatures as required by the Presidential Primary Act, and that Plaintiff's name would not be placed on the 2016 primary election ballot. (*Id.*) Following this rejection, Plaintiff's campaign staff made several inquiries for additional information regarding the petition denial, and Defendant provided an explanatory letter on April 13, 2016. (Doc. 1 at 5–6; Doc. 37, Ex. 2.) This letter stated that Plaintiff had failed to secure the necessary signatures in Congressional District One, explaining that the state had processed 10,760 of his 12,940 submitted signatures and determined that only 2,901 were validly verified. (*Id.*) This determination meant that it was impossible for Plaintiff to have provided the 5,644 valid signatures necessary to reach the two percent threshold in District One even if one hundred percent of the unprocessed signatures were valid. (*Id.*)

The New Mexico Democratic Presidential Primary took place on June 7, 2016.

During the course of discovery, Plaintiff took a deposition of Kari Fresquez, the New Mexico Secretary of State's chief elections director, on May 4, 2017. (*See generally* Doc. 55-2). According to Plaintiff, Fresquez's testimony establishes that: 1) the sole basis used to invalidate signatures recorded on Plaintiff's nominating petitions was if the address recorded on the nominating petition failed to match the address recorded for the voter on their voter registration record; 2) there are no regulations which authorize Defendant to require that signers of presidential nomination petitions engage in the memory exercise of recording the same address that they used when they registered to vote; and 3) the New Mexico Elections Code does not require the state to verify that signatures collected for inclusion in the Democratic primary

belonged to voters registered in the Democratic party. (Doc. 55 at 7–8, 12). On May 19, 2017, the Court issued its Memorandum Opinion and Order granting Defendant's motion to dismiss. On June 5, 2017, the transcript of Fresquez's deposition was produced to Plaintiff's legal counsel. (Doc. 55-6 at 2 (Ex. E, Transcript File Delivery).) Plaintiff contends that this evidence established facts which now give rise to the additional constitutional and statutory claims that Plaintiff should be permitted to amend into the pleadings of this action.

### III. LEGAL STANDARDS

#### A. Motions to Alter or Amend Judgment under Rule 59(e)

Because the Court has an interest in preserving the finality of its judgments, reconsideration is considered an extraordinary remedy which should be granted only in extraordinary circumstances. *F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998). A Rule 59(e) motion to amend a judgment is appropriate only if the moving party can establish one of the following prerequisites: (1) an intervening change in controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Alto Eldorado Partners v. City of Santa Fe*, 664 F. Supp. 2d 1213, 1215–16 (D.N.M. 2009). These motions are not an appropriate vehicle to "reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Paraclete*, 204 F.3d at 1012; *see also Voelkel v. Gen. Motors Corp.*, 846 F.Supp. 1482, 1483 (D. Kan.), *aff'd,* 43 F.3d 1484 (10th Cir. 1994) (noting that a motion for reconsideration "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."). The decision to grant or deny such a motion "is

committed to the reviewing court's sound discretion." *United States v. Sims*, 252 F. Supp. 2d 1255, 1261 (D.N.M. 2003).

### B. Motions to Amend the Complaint

In addition to his request to set aside the Court's judgment, Plaintiff also seeks to amend his Complaint to plead additional facts and legal claims. (Doc. 55 at 2.) Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." Unlike the good cause requirements under Rule 16, this standard has been described as lenient and easily reached. *Rowen v. New Mexico*, 210 F.R.D. 250, 252 (D.N.M. 2002); *Youell v. Russell*, Civ. No. 04-1396 JB/WDS 2007 WL 709041, at *1 (D.N.M. Feb. 14, 2007). Under this rule, leave to amend should be granted "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

However, the Tenth Circuit "has repeatedly and unequivocally held that, '[o]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)'." *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005) (quoting *Seymour v. Thornton*, 79 F.3d 980, 987 (10th Cir. 1996)). Further the presumption of permissiveness under Rule 15 "is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed." *Id.* at 1087–88 (quoting *Bressner v. Ambroziak*, 379 F.3d 478, 484 (7th Cir. 2004)). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to

be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Id.* at 1087 (quoting 6 Wright & Miller, § 1489, at 694).

## IV. PLAINTIFF'S MOTION TO AMEND JUDGMENT

The basis of Plaintiff's request to alter this Court's judgment entered on May 19, 2017 is the availability of new evidence, rather than an intervening change in law. (Doc. 55 at 3.) Additionally, Plaintiff claims that denying his requested relief "based on facts first established during discovery would constitute a manifest injustice to Plaintiff." (*Id.* at 4.)

### A. New Evidence

The Court first notes that in order to consider new evidence, the party seeking reconsideration must show that such evidence "could not have been obtained previously through the exercise of due diligence." *Paraclete*, 204 F.3d at 1012. Stated differently, the evidence must either not have been available at the time of decision or that counsel made diligent but unsuccessful attempts to discover available evidence it now seeks to introduce. *Somerlott v. Cherokee Nation Distrib.*, 686 F.3d 1144, 1153 (10th Cir. 2012). "At the time of decision" in this context means evidence available before the order of the court is entered. *See Monge v. RG Petro- Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012); *In re Cook*, No. 7-04-17704-NLJ, 2013 WL 2477273, at *1 (Bankr. D.N.M. June 11, 2013).

The parties initially dispute whether Plaintiff was diligent in taking the deposition of Fresquez, as she was not subpoenaed until April 21, 2017, nearly two months after she was disclosed as a defense expert and only two weeks prior to the close of discovery. *See* (Doc. 56 at 7); (Doc 57 at 8-9). However, this dispute is immaterial if the evidence from her deposition was in fact available and known to Plaintiff prior to this Court's decision. *See Somerlott*, 686 F.3d at 1153. Here, Defendants contend that the supposedly new evidence was available to Plaintiff

prior to the rendering of this Court's May 19, 2017 Memorandum Opinion and Order (MOO). In support of this contention, Defendants correctly note that the deposition of Fresquez, upon which Plaintiff relies in seeking reconsideration, was taken on May 4, 2017, fifteen days before the Court entered its order dismissing Plaintiff's claims. Plaintiff counters that, because the transcript of this deposition was not available to him until June 5, 2017, the evidence of Fresquez's testimony should not have been considered available or discoverable through due diligence at the time of decision. Other district courts addressing this factual scenario have found that, even where a record of evidence itself is not available to a party due to a delay in obtaining transcripts, the evidence is discoverable at the time of the deposition and a diligent party could request a deferral of consideration until the transcripts become available. *SRM, Inc. v. Great Am. Ins. Co.*, 2014 WL 11350315, at *6 (W.D. Okla. July 3, 2014), *aff'd*, 798 F.3d 1322 (10th Cir. 2015); *see also Goggin Warehousing, LLC v. Morin*, No. 4:08-CV-73, 2009 WL 2996405, at *3 (E.D. Tenn. Sept. 15, 2009); *Market Finder Ins. Co. v. Scottsdale Ins. Co.*, 2007 WL 2025210, *3 (W.D. Ky. June 9, 2007). As such, Fresquez's deposition testimony is not new evidence unavailable at the time of decision and cannot form the basis of a Rule 59 (e) motion to amend judgment.

### B. Merits of Request to Alter Judgment

While Fresquez's deposition testimony does not constitute new evidence, the Court will nonetheless examine the substance of this testimony in order to determine whether denying Plaintiff's requested reconsideration based on facts established during discovery would constitute a manifest injustice to him. According to Plaintiff, Fresquez's testimony establishes that: 1) the sole basis used to invalidate signatures recorded on Plaintiff's nominating petitions was if the address recorded on the nominating petition failed to match the address recorded for the voter on

their voter registration record; 2) there are no regulations which authorize Defendant to require that signers of presidential nomination petitions engage in the memory exercise of recording the same address that they used when they registered to vote; and 3) the New Mexico Elections Code does not require the state to verify that signatures collected for inclusion in the Democratic primary belonged to voters registered in the Democratic party. *See* (Doc. 55 at 7–8, 12). Plaintiff asserts that "Defendant's signature verification process is wholly inadequate to establish that any signer of Plaintiff's election petitions for President of the United States is not a registered voter because the failure of the voter to record an address matching the voter's registration record does not establish that the signor in not a registered voter, as required under New Mexico law." (*Id*. at 8.) Accordingly, Plaintiff seeks amendment or alteration of this Court's judgment with regard to the claims of his original Complaint.

Turning first to the factual statements contained in Fresquez's deposition testimony, while the record does indicate that the state review process would exclude a signature which does not match the address as registered even if a registered voter changed addresses within the same district, her testimony does not state that address discrepancies was the sole basis for denying the signatures contained in Plaintiff's petition. *See* (Doc. 55-2 at 9–10, Tr. 27:18–31:7.) Thus, this evidence does not contradict the April 13, 2016 explanatory letter relied upon by the court, which stated that the reason the rejected signatures were invalidated was that each "contained at least one factor which made it impossible to identify the individual as a registered voter in New Mexico" and listed the factors which invalidated Plaintiff's submitted signatures, including "individuals not appearing in the voter registration database based upon the information provided, addresses not matching the registration record, illegible information on the petitions, and names not appearing as registered." (Doc. 53 at 12–13; *see also* Doc. 1 at 5–6;

Doc. 37, Ex. 2). As Plaintiff's purportedly new evidence has failed to rebut the factual finding on which the granting of Defendants' motion to dismiss was based, this evidence does not undermine the Court's factual conclusions.

In addition, the Fresquez testimony does not warrant alteration of the Court's legal determinations as to any of the claims contained in Plaintiff's original Complaint. The Court has explained that New Mexico's two percent signature requirement was "minimally burdensome and legitimate in furtherance of a state's interest in bringing order to its democratic processes." (Doc. 53 at 11.) *See also Am. Party of Tex. v. White*, 415 U.S. 767, 788–89 (1974) (upholding Texas's signature thresholds of three and five percent for local independent candidates). Further, Fresquez's deposition was not inconsistent with the April 13, 2016 explanatory letter, which established that:

> the state has already provided: a specific reason for his exclusion from the ballot (a deficient number of valid signatures in Congressional District One); the precise number of signatures processed and invalidated (10,760 and 7,810, respectively); and the criteria used to invalidate the signatures provided ("individuals not appearing in the voter registration database based upon the information provided, addresses not matching the registration record, illegible information on the petitions, and names not appearing as registered.").

(Doc. 53 at 13 (citing Doc. 1 at 5–6; Doc. 37, Ex. 2).) Accordingly, the deposition evidence cited in Plaintiff's present motion does not warrant disturbance of the Court's finding that due process did not require an individualized breakdown of the specific reason each of thousands of signatures was rejected as invalid and its conclusion that the explanation provided by the state was sufficiently specific to satisfy the minimum constitutional standards of notice and due process, despite the low verification rate for submitted signatures. (*See* Doc. 53 at 12–14.)

Finally, to the extent that Plaintiff relies on this new testimony to establish that Defendant failed to comply with New Mexico state election law in reviewing his petition signatures, this

fact itself does not give rise to a justiciable federal claim warranting alteration of the previous judgment. (*See* Doc. 53 at 14 ("determination of whether or not the Secretary of State properly concluded that Plaintiff did not provide a sufficient number of valid signatures for inclusion of the primary ballot necessarily turns on an interpretation of the state's election code, which falls outside the jurisdiction of this Court).) *See also ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir. 1998) ("federal courts have no jurisdiction to entertain a suit that seeks to require [a] state official to comply with state law"). Accordingly, Plaintiff's newly pled facts do not warrant amendment to this Court's judgment with respect to the claims of his original Complaint.

## V. PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

In addition to seeking amendment of this Court's judgment, Plaintiff also requests leave to amend his Complaint to incorporate "facts newly discovered in deposition testimony taken in this action which give rise to additional cognizable and facially valid constitutional claims." (Doc. 55 at 1.)

As noted above, Plaintiff contends that Fresquez's deposition testimony stated the following three relevant facts: 1) the sole basis used to invalidate signatures recorded on Plaintiff's nominating petitions was if the address recorded on the nominating petition failed to match the address recorded for the voter on their voter registration record; 2) there are no regulations which authorize Defendant to require that signers of presidential nomination petitions engage in the memory exercise of recording the same address that they used when they registered to vote; and 3) the New Mexico Elections Code does not require the state to verify that signatures collected for inclusion in the Democratic primary belonged to voters registered in the Democratic party. (Doc. 55 at 7-8, 12). In addition to asserting that these facts warrant

10

reconsideration of his previously pled causes of action, Plaintiff contends that these facts give rise to additional claims for violation of the National Voter Registration Act of 1993 (NVRA) and First Amendment constitutional association rights. With regard to his NVRA claim, Plaintiff asserts that Defendants "diminish[ed] the bundle of registration rights for those who move to a different address within the county in which they are registered to vote." (*Id*. at 9–10). With regard to his First Amendment claim, Plaintiff contends that, by failing to prohibit registered Republicans from signing a nomination petition for a candidate seeking the nomination of the Democratic Party, the New Mexico Elections Code violates his political party's right to exclude non-party members from participating in the selection of their party's candidates for public office. (*Id*. at 11–12).

### A. Plaintiff's NVRA Claim

The NVRA, 52 U.S.C. §§ 20501–20511, established requirements for voter registration for elections for federal office, with the following stated purposes:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained.

*Id*. § 20501; *Fish v. Kobach*, 840 F.3d 710, 720 (10th Cir. 2016). Of relevance to the present dispute, Section 8 of the NVRA prohibits states from removing the name of any registered voter from a voter registry list based on a change of address unless either: (1) the registrant confirms in writing that he or she has moved to an address outside of the registrar's jurisdiction, or (2) he or she failed to respond to a notice and does not vote in the next two general federal elections (a minimum of four years). 52 U.S.C. § 20507(b)(2), (d), (f). The NVRA further requires a state to permit an elector to vote even if he or she failed to notify the registrar of a change of address

prior to the date of the election. *Id*. § 20507(e). However, this statute is not applicable to Plaintiff's allegations regarding challenges to a state's processing of collected signatures.

The NVRA expressly regulates the rights of a voter to vote in a federal election. *See* 52 U.S.C. § 20501(b). In addition, it extends a private right of action to sue for enforcement only to persons aggrieved by a violation of these regulations *Id*. § 20510(b)(1). In addressing facts directly analogous to the present case, district courts have held that an unsuccessful candidate for federal office who alleged that signatures on nominating petitions were invalidated on grounds contrary to NVRA were not "aggrieved persons" and did not have jurisprudential standing because candidates did not allege they were deprived of the right to vote for federal elective office, but instead complained about losing their right to be placed on the ballot. *See Krislov v. Rednour*, 946 F. Supp. 563, 566 (N.D. Ill. 1996); *Farquharson v. Click*, No. 608CV989 ORL28DAB, 2008 WL 11335112, at *3 n. 3 (M.D. Fla. July 11, 2008). Accordingly, Plaintiff lacks standing to bring a claim under the NVRA, and his requested amendment to bring such a claim must be rejected as futile. *See Weinstein v. U.S. Air Force*, 468 F. Supp. 2d 1366, 1375 (D.N.M. 2006) (finding that requested amendment to the complaint would be futile due to lack of standing).

### B. Plaintiff's First Amendment Association Claim

In support of this claim, Plaintiff asserts that "Ms. Fresquez admitted in her deposition testimony that the New Mexico Election Code does not prohibit registered Republicans from signing a nomination petition for a candidate seeking the nomination of the Democratic Party (in fact her testimony indicates that signatures from non-Democrats were not invalidated)." (Doc. 55 at 12.) As an initial matter, this assertion misstates the record. Review of the deposition transcript reveals that, when asked whether the state statute requires Republicans to sign only Republican

petitions and Democrats sign only Democrat petitions, she replied that she did not clearly see that requirement in the statute, but stated that she would need to consult with an attorney. (Doc. 55-2 at 7–8, Tr. 21:16–23). However, even assuming *arguendo* that the New Mexico Election Code does not prohibit registered Republicans from signing a nomination petition for a candidate seeking the nomination of the Democratic Party, Plaintiff fails to demonstrate a cognizable claim warranting amendment to his Complaint.

As Plaintiff correctly notes, the United States Supreme Court has expressly held that political parties have a First Amendment right to exclude non-party members from participating in the selection of their party's candidates for public office. *See Cal. Democratic Party v. Jones*, 530 U.S. 567, 580–86 (2000); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). However, Plaintiff failed to provide any authority, nor is this Court aware of any, which allows a candidate seeking endorsement of his party, rather than the party itself, to assert this right. This is because the right concerns a party's ability to regulate its own internal affairs and structure. *See Timmons*, 520 U.S. at 358; *Eu v. San Francisco Cty. Democratic Central Comm.,* 489 U.S. 214, 230 (1989). Further, while this right prohibits states from limiting political party endorsements or separation during the primary process, there is no indication that a state is required to segregate by party affiliation when determining eligibility to appear on the ballot. Indeed, state regulations that required voters in a party primary to be registered party members have been struck down for violating a party's associational right by limiting "the group of registered voters whom the Party may invite to participate in the basic function of selecting the Party's candidates." *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 215–16 (1986). Thus, while the Democratic party has an associational right to limit participation in its primary, a prospective candidate cannot assert this right, nor is the state required to ascertain political

affiliation through its signature verification process for general inclusion on primary ballots. *See, e.g.*, *Timmons*, 520 U.S. at 360 (holding that a party's associational right to select its standard bearer does not implicate a state's prerogative to limit candidates appearing on the ballot to those who have complied with state election law).

As Plaintiff has failed to identify a cognizable claim upon which he may be granted relief, his request to amend his complaint does not overcome the presumption favoring finality of judgments and the expeditious termination of litigation and thus must be denied. *See Seymour*, 79 F.3d at 1087.

V. **CONCLUSION**

For the foregoing reasons, the Court will Deny Plaintiff's Motion to alter or amend this Court's May 19, 2017 judgment under Rule 59 (e) and deny his request for leave to amend his Complaint under Rule 15 (a).

**THEREFORE**

**IT IS ORDERED** that Plaintiff De LA Fuente Guerra's Motion (Doc. 55) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

14